**QUINN, Plaintiff-Appellant, v. STATE BOARD OF REAL ESTATE EXAMINERS, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23862.    Decided October 31, 1956.

Paul Mancino, for plaintiff-appellant.

C. Wm. O'Neill, Atty. Genl., Earl N. Merwin, Asst. Atty. Genl., for defendant-appellee.

### OPINION

By HURD, J:

This action originated before the State Board of Real Estate Examiners where plaintiff-appellant, James J. Quinn, a real estate broker, was charged with violation of §4735.18 R. C., sub-sections **A, B, E** and **T.** At the conclusion of the hearing, the Board, by unanimous vote, revoked appellant's broker's license and found as follows:

"The Board has carefully weighed the evidence in the above captioned case, and it is the finding of the Board that defendant is guilty as charged of violating §4735.18 R. C., sub-sections **A, B, E** and **T,** in that he knowingly made misrepresentations, made false promises regarding the G. I. Loan for execution of contract, failed to remit deposit of $500 to purchaser, and offered property for sale under G. I. Bill without being duly authorized by the owner."

Upon appeal to the Court of Common Pleas, the decision of the State Board was affirmed without opinion. The case is here appealed on questions of law from the judgment of affirmance of the Court of Common Pleas.

The record shows that William Sinclair, who was a real estate salesman in the employ of the plaintiff-appellant, had an "open listing" from one, Stanley Maleski, for the sale of a single residence property located in Parma, Ohio. It appears further from the evidence that the owner told agent, Sinclair, that he would not consent to the sale of his property under a G. I. Loan but that only a straight or conventional loan would be acceptable to him. Sinclair showed the property to the prospective purchasers, Paul L. and Hazel Ponder, husband and wife, who informed Sinclair that because of their limited financial ability they could purchase and finance the property only through a G. I. Loan although an F. H. A. Loan would be acceptable if it could be secured. Sinclair then took the Ponders to the broker's office where Quinn himself typed the offer of purchase for the signature of the Ponders. There is evidence also that Sinclair told Quinn that the owner did not wish to sell the property under a G. I. Loan. However, in typing the offer of purchase (Complainant's Exhibit A), Quinn made no reference to financing through a G. I. Loan, the only reference to financing being

that the sale was to be secured by a "first mortgage to any bank or trust company."

According to the testimony of the Ponders, when they objected to the omission of any reference to a G. I. Loan, Quinn assured them that the purchase would be conditioned upon securing such a loan for them and that the contract would not be enforced and the deposit of money accompanying the offer of purchase would be returned to them in the event a G. I. Loan could not be secured. There is evidence that upon these assurances the Ponders then signed the offer to purchase the property for $14,500 and made a deposit of $500 as a down payment to apply on the purchase price.

Thereafter, it appears from the evidence that efforts made by Quinn to secure a G. I. Loan were without success because the Certificate of Reasonable Value issued by the Veterans Administration was only in the sum of $14,000, being $500 short of the required appraisal for G. I. financing. Thereafter, a second request was made to secure a higher appraisal, but by letter dated August 16, 1954, the Veterans Administration advised Quinn that a Certificate of Reasonable Value would not be issued for more than $14,200, which still was not sufficient to authorize G. I. financing.

The record further shows that the transaction was abandoned when neither a G. I. Loan nor any other type of financing could be obtained.

Thereafter, the Ponders demanded in writing that their deposit money be returned to them. The record shows (BE 138) that the owner, with his son, went to Quinn and requested him to return the deposit of $500 to the Ponders "so we could have a clear mind to go ahead and sell the property * * *." Instead of complying with this request, the appellant threatened suit for his commission under threat of which the owner said that he, Quinn, could retain the $500 as partial commission.

Seven errors are assigned which can be condensed into two principal claims, namely, that the judgment of affirmance of the Court of Common Pleas was contrary to law and contrary to the manifest weight of the evidence.

It should be observed that this Court does not have this case for a hearing de novo but is confined to its jurisdiction on review to a consideration of the record made in the administrative agency and the Court of Common Pleas.

Sec. 119.12 R. C., so far as applicable, reads in part as follows:

"Any party adversely affected by any order of an agency issued pursuant to an adjudication denying * * * or revoking or suspending a license, may appeal from the order of the agency to the court of common pleas of the county in which the place of business of the licensee is located or the county in which the licensee is a resident, * * *.

"* * *

"The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance

with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. The judgment of the court shall be final and conclusive unless reversed, vacated, or modified on appeal."

Thus, these questions are presented: Did the Court of Common Pleas err in sustaining the order of the Board of Real Estate Examiners as being supported by reliable, probative and substantial evidence and as being in accordance with law?

It should be noted that appellant was charged with misrepresentation of the condition of the premises. We find, upon review, that there is not sufficient evidence to sustain this charge.

However, upon review of the entire record, it is our conclusion that the determination of the State Board of Real Estate Examiners and the judgment of affirmance of the Court of Common Pleas must be affirmed under **sub-sections B, E** and **T** of §4735.18 R. C., which insofar as applicable, are as follows:

"(B) Making any false promises with intent to influence, persuade, or induce;

"(E) Failure within a reasonable time to account for or to remit any money coming into his possession which belongs to others;

"(T) Having offered real property for sale or for lease without the knowledge and consent of the owner or his authorized agent, or on any terms other than those authorized by the owner or his authorized agent;"

We find there is credible, probative and substantial evidence that the appellant promised to return to the purchasers the deposit of funds made by them as a down payment in the event that a G. I. Loan could not be secured and that this promise induced them to sign the offer to purchase and that such offer was accepted by the seller at that time without knowledge that the offer of purchase was conditioned upon so-called G. I. financing.

The appellant attempts to excuse his conduct and his refusal to return the deposit on the ground that he was a representative only of the seller and that in securing the contract, he had earned his commission. We think this contention is untenable under the facts presented in this case as his principal, the owner, requested him to comply with the demand to return the deposit so that he could proceed to make a sale elsewhere. It was only under the threat of legal proceedings that the owner consented to the retention of the deposit by the broker after the owner had made the demand that the money be returned to the prospective purchasers.

Under this state of the record, this case comes within the rule enunciated by the Supreme Court in **Church v. Wahn-Evans Co., 153 Oh St 335**, the second syllabus of which is as follows:

"2. Money received from a prospective purchaser by a real estate broker, as a deposit on a contract of sale, on the express condition that if the transaction is not completed the deposit will be returned, is received by the broker in a fiduciary capacity, and his failure to return such money to the prospective purchaser, upon direction by the broker's

principal (the seller) and upon the abandonment or termination of the negotiations, constitutes a violation of the essential provisions of the Real Estate Brokers Act (§§6373-25 to 6373-51, inclusive, GC), and the surety on the bond executed by the broker in accordance therewith is liable to the prospective purchaser for damages caused by such violation."

At page 341 of that case, Matthias, J., speaking for a unanimous Court, declared:

"The broker came into possession of the deposit while acting in a fiduciary relationship and only by reason of that relationship which imposed an obligation of good faith and fair dealing. The broker was not authorized, or permitted, to exercise the function of a real estate broker and realize the benefits to be derived therefrom otherwise than by compliance with the law which must be treated as though it were written in his bond.

"It must be concluded that the deposit procured from the plaintiff by the broker became a trust fund in the broker's hands and when the purpose for which the plaintiff had been persuaded to entrust the funds to the broker failed, it became the broker's duty, as trustee of that fund, under the very law by virtue of which it had been licensed to act as a broker, to return that sum to the plaintiff. That would have been the broker's duty and obligation even in the absence of an express promise so to do."

To the same general effect, see also **Downey v. Arnonoff, 19 Oh Ap 424.**

It is clear that in the present case, the broker was acting in a fiduciary relationship and, therefore, a standard of good faith, fair dealing and fidelity was required of him, both toward the buyers and his principal. The deposit secured by him became a trust fund in his hands and it was his duty to return the fund upon the demand of the buyer and the request of his principal when the purpose for which it was entrusted to him failed.

The right to engage in the business of a real estate broker is in the nature of a privilege granted by the state and controlled by the statutory provisions of the Real Estate Brokers Act. Thus a standard of conduct is prescribed which must be maintained with care and exactitude in all dealings and transactions. Failure to meet such a standard through violation of specific provisions and requirements of the Code when shown by reliable, probative and substantial evidence constitutes a breach of trust for which the licensing privilege will be revoked.

We have concluded that we cannot say that the judgment of the Court of Common Pleas, affirming the decision of the Real Estate Board of Examiners, was contrary to law or against the manifest weight of the evidence.

For the reasons stated, the judgment of the Court of Common Pleas is affirmed. Exceptions allowed. Order see journal.

KOVACHY, PJ, SKEEL, J, concur.