HUGHES, Appellant,

v.

OHIO DIVISION OF REAL ESTATE, Appellee.

[Cite as *Hughes v. Ohio Div. of Real Estate* (1993), 86 Ohio App.3d 757.]

Court of Appeals of Ohio,
Montgomery County.

No. CA 13531.

Decided March 19, 1993.

*Alan A. Biegel,* for appellant.

*Lee Fisher,* Attorney General, and *Laurel D. Blum,* Assistant Attorney General, for appellee.

---

FAIN, Judge.

Plaintiff-appellant David C. Hughes appeals from a judgment of the Montgomery County Court of Common Pleas affirming an order of the Ohio Real Estate Commission ("Commission"). The order suspended Hughes's real estate license for thirty days for misconduct. The trial court found that the order of the commission was supported by reliable, probative and substantial evidence.

 Upon reviewing an administrative agency's order, a trial court must determine whether the agency's conclusion is supported by reliable, probative and substantial evidence and whether it is in accordance with law. We conclude that we are bound to affirm the judgment of the trial court based upon the holding in *Richard T. Kiko Agency, Inc. v. Ohio Dept. of Commerce, Div. of Real Estate* (1990), 48 Ohio St.3d 74, 77, 549 N.E.2d 509, 512–513. We do so with some misgiving, and invite the Ohio Supreme Court to reconsider the scope of its holding in *Kiko.*

I

A real estate salesman with Hughes's firm, Executive Realtors, listed a property located at 3504 Kingswood Drive in Kettering, Ohio. The property was owned by Roger A. Wheeler. Hughes listed a property owned by Arthur and Doris Barker located at 2025 Colton Drive in Kettering. Wheeler's property listed at a value greater than the value of the Barker property.

Wheeler and the Barkers contracted to exchange their respective properties. Wheeler deposited $500 as earnest money with Hughes for the purchase of the Barker property. Vernon Creek, the agent associated with Executive Realtors who had listed the Wheeler property, provided the earnest money on behalf of Wheeler. Hughes placed the money in a non-interest-bearing trust account.

The Barkers applied for a loan in order to complete the transaction. Although the Barkers obtained loan approval, they chose not to complete the transaction with Wheeler. Wheeler filed suit against the Barkers seeking damages for breach of contract. Subsequently, Wheeler sold his property. After allegedly seeking the advice of an attorney, Hughes refunded the earnest money deposited on Wheeler's behalf for the purchase of the Barker property. Hughes did not inform the Barkers of the refund.

Arthur Barker filed a complaint with the Ohio Division of Real Estate against Hughes. Hughes was ultimately found to have committed misconduct in violation of R.C. 4735.18(A)(6) by having refunded Wheeler's earnest money without the approval of the Barkers. The commission issued an order suspending Hughes's real estate license for thirty days. Hughes appealed to the Montgomery County Court of Common Pleas. The trial court affirmed the order of the commission. From the trial court's decision, Hughes appeals.

## II

Hughes's sole assignment of error is as follows:

"It was error for the lower court to affirm the finding of the Real Estate Commission that the appellant committed misconduct by the refunding of the earnest money deposit when no statute, administrative rule or canon of ethics provision or other provision of law existed to proscribe it and the advice of an attorney was obtained and followed in respect to the disposition of such deposit."

Hughes does not challenge the trial court's finding that the decision of the commission was supported by reliable, probative and substantial evidence. Hughes does challenge the trial court's failure to determine specifically whether the order of the commission was in accordance with the law and argues that the order was not in accordance with law.

The Ohio Supreme Court has held that the commission is empowered to determine whether the acts of a broker constitute "misconduct" within the meaning of R.C. 4735.18(F). *Kiko, supra,* first paragraph of the syllabus. In 1988, R.C. 4735.18(F) was amended; the provisions of division (F) were retained in R.C. 4735.18(A)(6).

Additionally, the court set the standard for determining what constitutes misconduct. Under R.C. 4735.18(F), misconduct includes "unprofessional conduct

or that conduct involving any breach of duty which is prohibited under professional codes of ethics, or conduct which is contrary to law." *Id.* at paragraph two of the syllabus. Willfulness, good intentions or actual harm to a party are irrelevant when determining whether misconduct has taken place. *Id.*, 48 Ohio St.3d at 77, 549 N.E.2d at 513.

Furthermore, an Ohio appellate court has held that an administrative licensing board has the authority in a disciplinary action to rely upon its own expertise in deciding whether a realtor has failed to conform to a minimum standard of practice. *Vradenburg v. Ohio Real Estate Comm.* (1982), 8 Ohio App.3d 102, 8 OBR 136, 456 N.E.2d 573. Upon review, the commission must be given considerable discretion in a license suspension or revocation hearing in determining whether certain conduct is violative of a set standard of practice in the industry. *Id.* at 104, 8 OBR at 138–139, 456 N.E.2d at 575–576.

In *Vradenburg,* the real estate agent failed to double-check pertinent information regarding the school district within which the property was located. The buyer of the property specifically sought confirmation that the property was located within a particular school district. The real estate agent assured the buyers that the property was located within the desired school district without verifying the information. The agent's actions were held to violate Article 5.3 of the Canon of Ethics of the Real Estate Industry, which provides that a licensee must ascertain pertinent and material facts regarding every property to avoid error, exaggeration, misrepresentation, or concealment of material facts.

The Sixth District Court of Appeals of Ohio has held that a general policy of the commission that is not adopted as a formal rule should not be the basis for sanctions for noncompliance. *In re Suitability of Village Financial Services, Inc.* (Feb. 17, 1989), Lucas App. No. CV 87–2058, unreported.

In the case before us, the commission found that Hughes violated R.C. 4735.18(A)(6). R.C. 4735.18(A)(6) and (A)(26) provide as follows:

"(A) Subject to section 4735.32 of the Revised Code, the superintendent of real estate, upon his own motion, may investigate the conduct of any licensee. Subject to section 4735.32 of the Revised Code, the Ohio real estate commission shall suspend or revoke the license of any licensee who, whether or not acting in his capacity as a real estate broker or salesman, or limited real estate broker or salesman, or in handling his own property, is found to have been convicted of a felony or a crime of moral turpitude, and shall suspend or revoke the license of any licensee who, in his capacity as a real estate broker or salesman, or in handling his own property, is found guilty of:

"(6) Dishonest or illegal dealing, gross negligence, incompetency, or misconduct.

" * * *

"(26) Failure to maintain at all times a special or trust bank account, noninterest-bearing, separate and distinct from any personal or other account of the broker, to which account shall be deposited, and in which account shall be maintained, all escrow funds, security deposits, and other moneys received by the broker in a fiduciary capacity. The name, account number, if any, and location of the depository wherein such special or trust account is maintained shall be submitted in writing to the superintendent, which depository shall be located in this state."

Article 7 of the Canons of Ethics for the Real Estate Industry provides that "[t]he licensee should keep in a special non-interest bearing bank account, separated from his own funds, monies coming into his hands in trust for other persons, such as escrows, trust funds, client's monies and other like items."

Although Article 7 and R.C. 4735.18(A)(26) require a licensee to maintain funds in a special non-interest-bearing account separate from his own funds, the article and the statute are silent regarding the procedure for disbursing such funds to the parties. Obviously, the disbursement of earnest money will ultimately be necessary, but Article 7 and the statute provide no guidance with respect to the proper procedure a broker should follow in ultimately disbursing earnest money.

■ Wheeler deposited $500 with Hughes as earnest money. Hughes deposited the money in a non-interest-bearing account. The Barkers refused to close the transaction with Wheeler, despite the fact that they had received approval on their loan application. After Wheeler's property was sold to a third party and upon request from Wheeler, Hughes returned the $500 earnest money to Wheeler. The commission found that this constituted misconduct.

Hughes's conduct in the instant case is not expressly prohibited under Ohio statute, the Ohio Administrative Code or in the Canons of Ethics for the Real Estate Industry. All three are silent as to the circumstances under which a real estate broker should return earnest money to an individual involved in a failed real estate transaction.

Conduct that is inherently wrong in and of itself or that is illegal from the very nature of the transaction is said to be *malum in se*. In contrast, conduct that is not inherently immoral or evil but is wrong only because it is prohibited or expressly forbidden by positive law is considered *malum prohibitum*. Hughes's conduct is neither *malum in se* or *malum prohibitum*.

We conclude that it is not inherently wrong to return earnest money to the payor when the other party refuses to close a transaction. It is not inherently wrong because reasonable minds may reach different conclusions as to whether it is a good idea for brokers to have that authority. On the one hand, it may be

reasoned that because a broker is not a lawyer, the broker should not usurp the functions of the lawyers and the courts in determining what should be done with an earnest money deposit when a deal falls through; on the other hand, it may be reasoned that a party who is clearly entitled to the return of the earnest money should not have to wait for a court order just because the other party unreasonably objects. Either conclusion may find support among reasonable adherents. One would preclude a broker from refunding earnest money without either a court order or the consent of both parties; the other would permit the broker, at his peril, to refund earnest money to the party to whom, in the opinion of the broker, it is clearly due.

Although Hughes's conduct could have been made *malum prohibitum*, we cannot say that it was *malum in se*.

Before the commission may prohibit conduct that is not *malum in se*, it should give a person of ordinary intelligence reasonable notice that his contemplated conduct is forbidden. Hughes was not on notice that his conduct would be considered inappropriate, and he was suspended for conduct that was not apparently wrong. This lack of notice would seem to violate due process concepts that require that persons be given fair notice of conduct that may expose them to sanctions.

*Kiko, supra,* is potentially distinguishable from the case before us. In *Kiko,* the real estate broker violated R.C. 4735.18(Z), which expressly requires a broker to deposit and maintain in a non-interest-bearing account any funds given to him pending the sale of real estate, and Article 7 of the Canons of Ethics for the Real Estate Industry, which requires that a licensee keep in a special bank account, separate from his own funds, monies coming into his hands in trust for other persons.

A default provision in the agreement between the buyer and seller provided that if the buyer refused to perform, the agreement could be declared void by the seller, and, at the seller's option, all monies paid on account, not in excess of fifteen per cent, would be forfeited to seller as liquidated damages. Kiko informed the buyers' attorney that the deposit of $3,600 would be held in a bonded escrow account until the sale was complete, the parties' agreement was secured, or a court order was issued. The buyers were unable to obtain financing for the balance of the purchase price. The sellers' attorney sent the buyers a letter informing them that they were in breach of contract. A copy of the letter was sent to Kiko.

Kiko failed to inform or obtain consent from the parties before placing the escrowed funds in an interest-bearing account. Kiko also disbursed the funds, including the interest, without the parties' consent, to his own firm, the seller and a termite inspection firm. His conduct thereby breached both the express

language of the statute requiring that the funds be deposited in a non-interest-bearing account and his express undertaking not to disburse the funds without either the consent of the parties or a court order.

Kiko's actions fall within the standard for misconduct set forth by the Ohio Supreme Court. Hughes's actions appear to be distinguishable, in that (i) he never undertook to keep the earnest money on deposit until the parties agreed what should be done with the earnest money or there was a court order; and (ii) he did not disburse the earnest money to himself or to anyone other than the payor, who appeared to be clearly entitled to the return of the earnest money under the circumstances.

Although the case before us appears to be potentially distinguishable from *Kiko, supra,* we cannot distinguish the holding in *Kiko,* as set forth in its penultimate paragraph, as follows:

"The undisputed facts of this case show that Kiko violated R.C. 4735.18(Z) by placing the funds given the agency into an interest-bearing account. *He also disbursed the funds without the consent of both parties to the real estate transaction, thereby breaching his fiduciary obligation as expressed in Article 7 of the Canons of Ethics.* The Ohio Real Estate Commission, therefore, had sufficient evidence to conclude that Kiko's acts constituted 'misconduct' within the meaning of R.C. 4735.18(F)." (Emphasis added.) *Id.,* 48 Ohio St.3d at 77, 549 N.E.2d at 513.

The emphasized portion of the holding quoted above is broad enough to encompass the acts of Hughes in the case before us, even though there would appear to be good reasons for distinguishing Hughes's conduct from Kiko's. Accordingly, we are obliged to follow *Kiko,* but we do so with misgivings, and we invite the Supreme Court to reconsider the breadth of its holding in that case. In our view, Hughes's having refunded the earnest money to the payor under the circumstances of this case was neither expressly prohibited by law or regulation, nor so clearly wrong that any reasonable broker would know that he was not supposed to do so.

For the reasons noted, Hughes's sole assignment of error is overruled.

### III

Hughes' sole assignment of error having been overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

GRADY, P.J., and BROGAN, J., concur.