**DAYTON AREA HEALTH PLAN, INC., et al., Appellants,**

**v.**

**OHIO DEPARTMENT OF INSURANCE, Appellee.**

[Cite as *Dayton Area Health Plan, Inc. v. Ohio Dept. of Ins.* (1995), 107 Ohio App.3d 392.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 14784.

Decided Nov. 15, 1995.

*Mark R. Chilson,* for appellants.

*Betty D. Montgomery,* Attorney General, and *Julia M. Graver,* Assistant Attorney General, for appellee.

FAIN, Judge.

Plaintiff-appellant Dayton Area Health Plan ("DAHP") appeals from an adverse judgment upon its complaint for declaratory judgment and injunctive relief. DAHP contends that the trial court erred in concluding that R.C. 1742.12, as applied to DAHP, was not pre-empted by the passage of federal Public Laws

102–276 and 103–66. Furthermore, DAHP contends that the trial court abused its discretion when it concluded that DAHP had failed to prove that compliance with Ohio's open enrollment requirement would jeopardize DAHP's economic viability and found that DAHP was not entitled to a waiver from the open enrollment requirement pursuant to R.C. 1742.12(D).

We do not find merit in either of DAHP's contentions. We agree with the trial court's conclusion that R.C. 1742.12, as applied to DAHP, is not pre-empted by federal Public Laws 102–276 and 103–66, although we reach our conclusion upon different grounds. Moreover, careful review of the record reveals that DAHP did not raise the issue in the trial court concerning its alleged entitlement to exemption from the open enrollment requirement pursuant to R.C. 1742.12(D). Therefore, we need not address this issue, which is raised for the first time on appeal. Accordingly, the judgment of the trial court is affirmed.

# I

This case involves an action for declaratory judgment and a permanent injunction brought by plaintiff-appellant Dayton Area Health Plan and its affiliate, Health Plan Network (hereinafter collectively referred to as "DAHP"), against defendant-appellee Ohio Department of Insurance ("ODI").

ODI is the state department responsible for enforcing the laws governing health maintenance organizations ("HMOs") within the state of Ohio, specifically the laws set forth in R.C. Chapter 1742. DAHP is an Ohio not-for-profit corporation and an HMO organized in 1985 in response to increasing difficulty delivering affordable health care to Montgomery County's Medicaid and general assistance population. As of July 1, 1994, DAHP had 26,673 members, all of whom were Medicaid or general assistance recipients. DAHP is one of very few health insurance networks in the country organized to provide health care solely to the Medicaid/general assistance population with no commercial, private-paying enrollees.

As an HMO for Medicaid recipients, DAHP is financed through both state and federal funding. According to federal Medicaid regulations, the federal government will match state expenditures for Medicaid recipients if the organization complies with the requirements set forth in the federal Social Security Act. Section 1396 *et seq.*, Title 42, U.S.Code. One particular prerequisite, known as the "75/25 rule," requires that in order for a HMO to be eligible to receive federal Medicaid matching funds for its Medicaid enrollees, the HMO must consist of at least twenty-five percent non-Medicaid, commercial enrollees. Section 1396b(m)(2)(A)(ii), Title 42, U.S.Code. The purpose behind the 75/25 requirement mix is to ensure the quality of care provided to Medicaid recipients. Congress theorized that if one out of every four enrollees in a given HMO were not a

Medicare recipient, it would be unlikely that the effect of the federal largesse would be to create a two-tiered system, with HMOs providing services to Medicare recipients providing substantially less service than other HMOs providing services to the general population. If a Medicare-eligible HMO were able to attract non-Medicare recipients to fill at least twenty-five percent of its membership, it would presumably be offering services comparable to those of other HMOs not catering to Medicare recipients.

Because DAHP was organized for the sole purpose of organizing a health care network for Montgomery County's Medicaid and general assistance population, DAHP sought and obtained a one-time, three-year administrative waiver of the federal 75/25 membership requirement from the Federal Health Care Financing Administration. When the federal administrative waiver expired on April 30, 1992, DAHP sought and received a waiver of the 75/25 membership requirement through the passage of Public Law 102–276 by the United States Congress, which granted DAHP a waiver until January 31, 1994. DAHP's congressional waiver was extended again until December 31, 1995, by Public Law 103–66.

To become licensed to operate in the state of Ohio, all HMOs must comply with the regulatory laws set forth in R.C. Chapter 1742. One licensing regulation, set forth in R.C. 1742.12, requires that all HMOs that have been in business for twenty-four months and that meet certain financial requirements must hold an advertised, thirty-day open enrollment period at least once during every calendar year. During open enrollment, the HMO is required to accept all commercial, non-group applicants in the order of their application, up to one percent of the HMO's total enrollees. During the open enrollment period, notwithstanding certain limited exceptions set forth in the statute, the HMO cannot deny a commercial, non-group applicant enrollment based on the applicant's health status. An HMO is excused from the open enrollment requirement only if it can demonstrate to the satisfaction of the Superintendent of Insurance that open enrollment would jeopardize the organization's economic viability. R.C. 1742.12(D). If the organization successfully establishes that compliance with the requirements of open enrollment will jeopardize its economic viability, the Superintendent of Insurance may waive the requirement or make other concessions aimed at preserving the organization's economic viability.

It is generally accepted that the purpose behind Ohio's mandatory open enrollment period is to provide a health insurance option for individuals who might otherwise be unable to obtain health insurance due to pre-existing medical conditions. Additionally, by requiring all HMOs to hold open enrollment, the burden of covering high-demand illnesses, such as AIDS, cancer, and high-risk pregnancies, is shared by all of the licensed HMO's in the local health care community.

In October 1992, ODI notified DAHP of its obligation to hold open enrollment pursuant to R.C. 1742.12. In response to the notification, DAHP requested that ODI waive the open enrollment requirement for DAHP because it was not administratively prepared to hold open enrollment. ODI denied the request for the waiver, but granted DAHP a seven-month extension to comply with the requirement.

During the seven-month extension period, although DAHP filed proposed rates and public notices in preparation for open enrollment, DAHP also sought a legislative exemption from open enrollment from the Ohio General Assembly. Although the statutory exemption passed both houses of the General Assembly, Governor Voinovich vetoed it; the veto was not overridden. DAHP then requested ODI to limit its open enrollment requirement to twenty-five enrollees. When that request was denied, DAHP again requested an exemption from open enrollment. ODI denied the request on the basis that DAHP had failed to establish that holding open enrollment would jeopardize the organization's economic viability.

In July and August 1993, after DAHP still had not complied with the open enrollment requirement, ODI threatened to take administrative action in the form of fines or suspension or revocation of DAHP's license if DAHP did not immediately comply with the open enrollment requirements set forth in R.C. 1742.12.

On September 23, 1993, DAHP filed the present action with the Montgomery County Court of Common Pleas seeking (1) a judicial declaration that the open enrollment requirements set forth in R.C. 1742.12 as applied to DAHP were pre-empted by federal Public Laws 102–276 and 103–66, and (2) a permanent injunction enjoining ODI from requiring DAHP to comply with open enrollment requirements until December 31, 1995, the time when the federal waiver of the 75/25 enrollment requirement was due to expire.

After a trial to the bench, the trial court denied DAHP's requests for declaratory judgment and injunctive relief in a decision journalized on September 1, 1994.

From this judgment, DAHP appeals.

## II

DAHP's first assignment of error is as follows:

"The trial court erred to the prejudice of DAHP in its determination that O.R.C. § 1742.12 as applied to DAHP was not pre-empted by federal law."

■ The Supremacy Clause (Clause 2, Article VI) of the United States Constitution provides that laws of the United States "shall be the supreme Law of the land * * *." Pursuant to this provision, the United States Congress possesses the power to pre-empt state law. See, generally, *Fid. Fed. S. & L. Assn. v. de la Cuesta* (1982), 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664.

■ "The question of whether a certain state action is pre-empted by federal law is one of congressional intent." *Gade v. Natl. Solid Wastes Mgt. Assn.* (1992), 505 U.S. 88, 112 S.Ct. 2374, 120 L.Ed.2d 73, citing *Allis–Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 208, 105 S.Ct. 1904, 1909–1910, 85 L.Ed.2d 206, 213. " 'To discern Congress' intent we examine the explicit statutory language and the structure and purpose of the statute." *Gade,* citing *Ingersoll–Rand Co. v. McClendon* (1990), 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474, 483. Because pre-emption law generally cautions courts to be reluctant to infer pre-emption, courts should start with the presumption that federal legislation was not intended to displace state laws. *Bldg. & Constr. Trades Council of the Metro. Dist. v. Associated Bldrs. & Contractors of Massachusetts/Rhode Island, Inc.* (1993), 507 U.S. 218, 113 S.Ct. 1190, 122 L.Ed.2d 565.

■ Pre-emption generally arises in three different situations. First, express pre-emption occurs when Congress's intent to pre-empt state law is expressly stated in the statute's language. *Jones v. Rath Packing Co.* (1977), 430 U.S. 519, 525, 97 S.Ct. 1305, 1309–1310, 51 L.Ed.2d 604, 613, 614. In the absence of express pre-emption language, field pre-emption occurs "where the scheme of federal regulations is ' "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement" ' " the regulations. *Gade,* 505 U.S. at 98, 112 S.Ct. at 2383, 120 L.Ed.2d at 84, citing *Fid. Federal S. & L.,* 458 U.S. at 152–153, 102 S.Ct. at 3022, 73 L.Ed.2d at 674–675. Finally, conflict pre-emption occurs where state law directly conflicts with federal law. *Gade.*

■ A conflict between state and federal law can occur where "compliance with both federal and state regulations is a physical impossibility," *Gade,* citing *Florida Lime & Avocado Growers, Inc. v. Paul* (1963), 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248, 256–257 or "where State law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Gade,* citing *Hines v. Davidowitz* (1941), 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581, 586.

■ DAHP does not contend that express or field pre-emption has occurred in this case, but raises the issue only of whether implied conflict pre-emption applies. DAHP argues that implied conflict pre-emption applies in the present case because its compliance with Ohio's open enrollment regulation would defeat the purposes and objectives behind Congress's enactment of Public Laws 102–276

and 103–66. According to DAHP, the purpose behind the congressional waiver of the federal 75/25 enrollment requirements was to "prevent the disruption of [DAHP]" by permitting it to operate as a Medicaid-only HMO with no commercial enrollment. DAHP asserts that by granting DAHP a waiver from the federal 75/25 requirement mix, Congress granted DAHP a federally conferred right to operate as a one hundred percent Medicaid HMO. Therefore, DAHP asserts that compliance with Ohio's open enrollment requirement, which would require DAHP to accept some commercial enrollees, would conflict with its federally conferred right to operate as a Medicaid-only HMO. Moreover, DAHP argues that compliance with Ohio's open enrollment requirements would detrimentally affect its financial viability and would, therefore, stand as an obstacle to meeting the congressional objective of "preventing the disruption of DAHP." Therefore, according to the alleged conflict between R.C. 1742.12, as applied to DAHP, and federal Public Laws 102–276 and 103–66, DAHP contends that the state law must yield to the federal law.

The trial court agreed with DAHP's interpretation of the purpose behind the congressional waiver as being "the preservation of DAHP." Accordingly, the trial court concluded that the pivotal issue in determining whether the state law was pre-empted by the federal law was whether DAHP's participation in the open enrollment period would compromise DAHP's financial viability, thereby creating an obstacle to achieving the federal purpose of "preserving DAHP." After hearing testimony regarding the effect that open enrollment might have on DAHP's economic viability, the trial court was not convinced that DAHP's compliance with open enrollment would threaten its economic viability. Therefore, the trial court held that R.C. 1742.12 was not pre-empted by federal Public Laws 102–276 and 103–66, because compliance with the state requirement would not conflict with the Congress's objective of preserving DAHP.

DAHP contends that the trial court erred to its prejudice by determining that R.C. 1742.12, as applied to DAHP, was not pre-empted by federal Public Laws 102–276 and 103–66 as a matter of implied conflict pre-emption. We do not agree.

We agree with the trial court that the question of whether R.C. 1742.12, as applied to DAHP, is pre-empted by the federally enacted public laws turns on whether DAHP's compliance with Ohio's open enrollment requirement would present an obstacle to achieving the purpose behind the congressional waiver. We also agree with the trial court's conclusion that DAHP's compliance with open enrollment would not obstruct the federal purpose behind the enactments; however, we reach this conclusion on different grounds.

■ As with any question of law, we review *de novo* the question whether R.C. 1742.12 is pre-empted by federal law. In this case, resolution of the conflict pre-

emption issue turns on how one defines Congress's purpose for enacting Public Laws 102–276 and 103–66.

Federal Public Law 102–276 is entitled as follows:

"An Act: To direct the Secretary of Health and Human Services to grant a waiver of the requirement limiting the maximum number of individuals enrolled with a health maintenance organization who may be beneficiaries under the Medicare or Medicaid programs in order to enable the Dayton Area Health Plan, Inc., to continue to provide services through January 1994 to individuals residing in Montgomery County, Ohio, who are enrolled under a State plan for medical assistance under title XIX of the Social Security Act." 106 Stat. 126.

The purpose of the waiver, as set forth in the House Report 102–494, was as follows:

"The purpose of H.R. 4572 is to provide temporary relief from the enrollment mix requirement of current Medicaid law to certain health maintenance organizations associated with the Dayton Area Health Plan, operating in Montgomery County, Ohio."

The trial court and DAHP have both construed the Congress's purpose for enacting Public Laws 102–276 and 103–66 too broadly. We do not agree that the purpose behind the enactment of the federal public laws should be construed as having been to "preserve DAHP." Instead, based on our review of the language of the federal public laws and the legislative history of the enactments, we find it more reasonable to conclude that by granting DAHP a waiver of the twenty-five-percent commercial enrollment requirement, Congress's immediate purpose was to permit DAHP to receive federal Medicaid funding even if it had less than twenty-five percent commercial enrollment.

We find nothing in either the language of the federal statutes or the legislative history to indicate that, by granting the waivers of the federal Medicaid funding prerequisite, Congress intended to affect DAHP's obligation to comply with Ohio's HMO licensing obligations, or that Congress intended to do anything more than lift the federal Medicaid funding requirement that presented an obstacle to DAHP's operation.

DAHP's congressional waiver of the twenty-five percent commercial enrollment requirement was not made contingent upon the number of DAHP's commercial enrollees. Accordingly, DAHP will continue to receive federal Medicaid matching funds pursuant to the congressional waivers in effect until December 31, 1995, without regard to the percentage of the organization's commercial enrollment. Therefore, DAHP can comply with Ohio's open enrollment requirement by accepting commercial enrollees up to one percent of its current enrollment without presenting an obstacle to achieving Congress's objective for DAHP to

receive federal Medicaid funding with less than twenty-five percent commercial enrollment. Accordingly, we conclude that DAHP's compliance with Ohio's open enrollment requirement does not present an obstacle to the accomplishment of Congress's purpose for enacting Public Laws 102–276 and 103–66. Because we do not construe the purpose behind the congressional legislation as being to "preserve DAHP," we need not pursue the question of whether DAHP's compliance with open enrollment would jeopardize its economic viability in order to reach this conclusion.

Furthermore, we find absolutely no support in either the language of the federal laws or the legislative history to support DAHP's contention that by granting DAHP a waiver from the federal Medicaid 75/25 rule, Congress granted DAHP a right to operate as a one-hundred-percent Medicaid HMO. The waiver was intended to excuse DAHP from prerequisites for federal assistance, rather than to confer rights. Accordingly, DAHP's compliance with Ohio's open enrollment requirements will not interfere with a federally conferred right.

Because we find no conflict between R.C. 1742.12, as applied to DAHP, and federal Public Laws 102–276 and 103–66, we conclude that the trial court did not err in determining that R.C. 1742.12, as applied to DAHP, is not pre-empted by federal Public Laws 102–276 and 103–66.

DAHP's first assignment of error is overruled.

## II

DAHP's second assignment of error is as follows:

"The trial court erred to the prejudice of DAHP in its determination that DAHP failed to prove that open enrollment would jeopardize its economic viability."

According to DAHP, R.C. 1742.12 exempts an HMO from the open enrollment requirement if it can establish that "open enrollment would jeopardize its economic viability." DAHP asserts that it presented sufficient evidence to the trial court to establish that compliance with open enrollment would jeopardize its economic viability. Accordingly, DAHP argues that the trial court abused its discretion by determining that open enrollment would not jeopardize DAHP's economic viability and by denying DAHP exemption from the requirement pursuant to the exception set forth in R.C. 1742.12(D).

▇ Initially, we note that R.C. 1742.12(D) provides that "where the health maintenance organization demonstrates *to the satisfaction of the superintendent [of insurance]* that such open enrollment would jeopardize its economic viability," the superintendent may exempt the organization from the requirement or make other accommodations aimed at preserving its economic viability. (Emphasis

added.)  The statute grants the Superintendent of Insurance, not the trial court, the explicit authority to decide whether a waiver of the open enrollment requirement is justified.  Accordingly, DAHP's challenge to the propriety of the superintendent's decision not to grant a waiver upon the ground of economic viability, a decision involving the substantial exercise of discretion, and lying within the superintendent's sphere of administrative expertise, should have been in the form of an administrative appeal.

Furthermore, from our review of the complaint and the transcript of the hearing before the trial court, we find that DAHP did not raise in the trial court the issue of the application of the Ohio statutory exemption set forth in R.C. 1742.12(D).  Nor is there any indication in the trial court's opinion that the trial court addressed an argument based on the exemption set forth in R.C. 1742.12(D).  Instead, a close review of the record reveals that DAHP raised arguments only about open enrollment's jeopardizing its economic viability as a part of its pre-emption argument, and the trial court addressed the economic viability issue only within the pre-emption context.  Specifically, the trial court, having concluded that the waiver enacted by the United States Congress was intended to ensure that DAHP's economic viability would be protected from both state and federal regulation, an interpretation of the federal waiver with which we disagree, then concluded that Ohio's open enrollment requirement would not undermine DAHP's economic viability.  The trial court was never called upon to, and never did, determine whether Ohio's statutory economic viability exemption applied to DAHP.

Because we conclude that DAHP never argued in the trial court that it was entitled to the benefit of the economic viability exemption provided for in R.C. 1742.12(D), it may not make that argument for the first time on appeal.

However, even if DAHP had raised the issue of the propriety of the superintendent's ruling under R.C. 1742.12(D) in the trial court, it is not likely that this argument would have prevailed.  The standard of appellate review of an administrative agency ruling is limited to a determination whether the agency's action is supported by reliable, probative and substantial evidence, and whether it is contrary to law.  *Richard T. Kiko Agency, Inc. v. Ohio Dept. of Commerce, Div. of Real Estate* (1990), 48 Ohio St.3d 74, 77, 549 N.E.2d 509, 512–513.  A reviewing court will not substitute its judgment for that of an administrative agency, especially in areas of administrative expertise.  See *West Virginia v. Ohio Hazardous Waste Facility Approval Bd.* (1986), 28 Ohio St.3d 83, 28 OBR 179, 502 N.E.2d 625.  Based on the evidence that DAHP presented at trial, in the context of the pre-emption argument, regarding the likely effect that open enrollment would have on DAHP's economic viability, a decision disturbing the superintendent's refusal to grant DAHP a waiver of the open enrollment require-

ment would not have been supported. DAHP's best argument in support of its eligibility for the economic viability exemption was that the failure to obtain the exemption from Ohio's open enrollment requirement would, in turn, lead the United States Congress not to renew the statutory waiver of the federal 75/25 requirement when it expires later this year, and the nonrenewal of the federal waiver would cause DAHP's demise. Although DAHP presented testimony that Congress would respond to DAHP's failure to obtain an exemption from the Ohio requirement by declining to renew the waiver from the federal requirement, we cannot accept its contention that the Ohio General Assembly intended to include the likely effect of its statutory requirements for HMO's upon legislative decisions of the United States Congress when it used the phrase "economic viability" in the exemption provision. The effect of the state requirement upon federal legislation is too remote, causally, to justify an exemption from the state requirement.

DAHP's second assignment of error is overruled.

## IV

Both of DAHP's assignments of error having been overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

BROGAN, P.J., and GRADY, J., concur.