OPINION
{¶ 1} This accelerated calendar appeal arises from the Portage County Court of Common Pleas. Appellants, John and Melissa Bedwell ("the Bedwells"), appeal a summary judgment ruling by the trial court.
 {¶ 2} The Bedwells entered into a purchase agreement to purchase a home from appellees, Alice and John Schmitt ("the Schmitts") on or about March 25, 2000. The Schmitts had retained Smythe, Cramer Company ("Smythe Cramer") to market their home while the Bedwells had retained Geneva Chervenic Realty ("Chervenic") to assist them in purchasing a home. Both realtors are listed as defendants-appellees in this appeal.
 {¶ 3} Subsequent to both the Bedwells and Schmitts negotiating a purchase agreement, the matter proceeded to closing. The Bedwells contend that after the closing their agent from Chervenic revealed to them that their home was built atop a capped gas well which was twenty feet below the surface of the property. The Bedwells further assert that, after the closing, Chervenic approached them about signing an addendum which indicated their awareness of the existence of the gas well. They refused.
 {¶ 4} The Bedwells made demand on the Schmitts to rescind the purchase agreement or to compensate the Bedwells for their loss. The Schmitts refused both requests.
 {¶ 5} The Bedwells then filed suit in February 2001, naming the Schmitts, Smythe Cramer, Chervenic, and Lawyers Title Insurance Corporation as defendants. The Bedwells asserted claims against all defendants for breach of contract, fraud, misrepresentation, and non-disclosure.
 {¶ 6} The Bedwells subsequently entered into a settlement agreement with Lawyers Title Insurance, and they are no longer a party to this action.
 {¶ 7} Smythe Cramer filed a motion for summary judgment. The Schmitts then filed a motion for summary judgment and it was denied. Chervenic then filed a motion for summary judgment, and the Schmitts then filed a second motion for summary judgment. The Bedwells then filed their response to the defendants' motions for summary judgment. The trial court granted summary judgment in favor of all defendants. The Bedwells filed this timely appeal.
 {¶ 8} The Bedwells' single assignment of error is:
 {¶ 9} "The trial court erred in granting summary judgment."
 {¶ 10} Within the Bedwells' assignment of error are several issues relating to the summary judgment granted to each defendant.
 {¶ 11} The Bedwells first contend that the judgment entry, denying summary judgment to the Schmitts, became the "law of the case" as it applies to the Schmitts and, therefore, the trial court erred when it later granted summary judgment in favor of all defendants, including the Schmitts.
 {¶ 12} The "law of the case" doctrine provides that "the decision of a reviewing court in a case remains the law of the case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels."[1] The doctrine essentially provides that an appellate court's determination on a legal issue is binding on both the trial court on remand and an appellate court on a subsequent appeal given the same case and substantially the same facts.[2]
 {¶ 13} The Bedwells contend that the doctrine should apply in this case. The Bedwells assert that, once the trial court denied the Schmitts' first summary judgment motion, the court was precluded from granting summary judgment in the Schmitts' favor.
 {¶ 14} We find that appellant's assertion is misguided. As noted by other Ohio appellate districts, "`the law of the case does not foreclose a trial court from granting summary judgment on an expanded record after a similar motion to dismiss has been denied.'"[3]
Therefore, any additional evidence accumulated and submitted in a subsequent motion for summary judgment may necessitate a granting of summary judgment in favor of that moving party. We find that the law of the case doctrine does not preclude such rulings.
 {¶ 15} The Bedwells also contend that summary judgment should not have been granted in favor of the Schmitts as there remain genuine issues of material fact with respect to the Bedwells' claims against the Schmitts.
 {¶ 16} Specifically, in their motion for summary judgment, the Schmitts argued that the doctrine of caveat emptor barred the Bedwells' claim against them. The Bedwells assert that caveat emptor does not apply in this case. We agree.
 {¶ 17} The Supreme Court of Ohio has held, "[t]he doctrine of caveat emptor precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor."[4]
 {¶ 18} The gas well in question is twenty feet below the surface of the property with the home built above it and, therefore, not open to observation or even discoverable upon reasonable inspection. The Bedwells could not have discovered the existence of the gas well by mere inspection of the property.
 {¶ 19} Somewhat related to this notion is the Schmitts' argument that the purchase agreement entered into by both parties contained an "As Is" clause which precludes recovery by the Bedwells. The clause reads in pertinent part:
 {¶ 20} "Inspection. Seller does not warrant the property or any of its structures, systems or appliances. Buyer shall have the right to inspect the property with any qualified professional Buyer chooses and to order and review a preliminary title report, at Buyer's sole election and expense, within 14 days after Acceptance. If Buyer is not satisfied with the inspection and/or title reports, and Buyer so notifies Seller in writing within the inspection period, then Seller may either 1) correct the unsatisfactory conditions or 2) void this agreement whereupon earnest monies on deposit shall be returned to Buyer. Buyer may waive any defects and accept the property as is. If Buyer does not inspect, inspection is waived and Buyer takes the property as is." (Emphasis in original).
 {¶ 21} As we have previously noted, a thorough home inspection would not have revealed the existence of the gas well and, therefore, the Schmitts cannot rely on the existence of the "As Is" clause in the purchase agreement to avoid liability. Moreover, the "As Is" clause does not prevent liability when the seller makes a fraudulent representation or concealment.[5] The Schmitts argue that they had made no representations to the Bedwells concerning the existence or nonexistence of the gas well on the property prior to closing. The issue at hand is nondisclosure or the failure to provide important information. In this case, the Schmitts admitted in answers to interrogatories that they were aware of the existence of the gas well and had disclosed that fact to Smythe Cramer. Therefore, if the Schmitts did not disclose anything about the existence of a gas well under their property to the Bedwells when they were aware of the well, the concealment of such a fact may render them liable.
 {¶ 22} The Bedwells also assert that there remains a genuine issue of material fact as to whether all defendants breached a duty to disclose the existence of the gas well to the Bedwells prior to closing via a residential property disclosure form.
 {¶ 23} The Bedwells cite R.C. 5302.30, which governs the residential property disclosure form. R.C. 5302.30 requires that a residential property disclosure form shall be executed by the seller of property and provided to a prospective buyer. All parties agree that a disclosure form was never provided to the Bedwells prior to closing.
 {¶ 24} A residential real estate transfer may be invalidated where there has been any act of "fraud, either by misrepresentation, concealment, or nondisclosure in a transaction involving the transfer of residential real property."[6]
 {¶ 25} Smythe Cramer and Chervenic both argue that no residential property disclosure form is required pursuant to R.C. 5302.30(B)(2)(l). That provision provides an exception to the disclosure form requirement when the real estate transfer involves a "newly constructed residential real property that previously has not been inhabited." It is not clear from the record whether the Schmitts ever actually inhabited the home, when the home was constructed or how the Schmitts came into ownership of the property. Therefore, a genuine issue of material fact still exists as to whether the property in question is exempt from the R.C. 5302.30
residential property disclosure form requirement. However, even if the property is found to be exempt from the property disclosure requirement, none of the defendants can rely on this provision to avoid liability for concealing the existence of the well.
 {¶ 26} R.C. 4735.62 sets forth the fiduciary duties owed by a real estate agent to the client:
 {¶ 27} "In representing any client in an agency or subagency relationship, the licensee shall be a fiduciary of the client and shall use the licensee's best efforts to further the interest of the client including, but not limited to, doing all of the following:
 {¶ 28} "(A) Exercising reasonable skill and care in representing the client and carrying out the responsibilities of the agency relationship;
 {¶ 29} "(B) Performing the terms of any written agency agreement;
 {¶ 30} "(C) Following any lawful instructions of the client;
 {¶ 31} "(D) Performing all duties specified in this chapter in a manner that is loyal to the interest of the client;
 {¶ 32} "(E) Complying with all requirements of this chapter and other applicable statutes, rules, and regulations * * *;
 {¶ 33} "(F) Disclosing to the client any material facts of the transaction of which the licensee is aware or should be aware in the exercise of reasonable skill and care and that are not confidential information pursuant to a current or prior agency or dual agency relationship;
 {¶ 34} "(G) Advising the client to obtain expert advice related to material matters when necessary or appropriate[.]"
 {¶ 35} The Bedwells assert that a genuine issue of material fact exists as to whether Chervenic breached their duty of care owed to the Bedwells. The Bedwells do not contend that Chervenic knew of the well before closing. However, the Bedwells argue that Chervenic breached the duty owed to the Bedwells by attempting to conceal the fact that the well's existence was not revealed by requesting that the Bedwells sign a "false" addendum, after the closing, which indicated that the Bedwells knew of the well. The Bedwells also contend that Chervenic never informed them of their right to receive a residential property disclosure form.
 {¶ 36} Chervenic contends that it could not have breached any duty of care owed to the Bedwells as it was not aware of the gas well until after the closing of the sale and, therefore, could not have disclosed its existence. As noted above, Chervenic contends that no disclosure form was required on the property as it was a newly constructed home that was not previously inhabited.
 {¶ 37} Moreover, Chervenic asserts that the Bedwells failed to establish a breach of duty when they failed to provide expert testimony regarding the applicable standard of care. Chervenic contends that, as real estate agents possess "knowledge and skill beyond the province of laypersons," expert testimony is required to demonstrate a breach of duty.
 {¶ 38} Lastly, Chervenic relies on the defenses of caveat emptor and the "As Is" clause in the purchase agreement to avoid liability.
 {¶ 39} As discussed above, the doctrine of caveat emptor does not apply where the defect in question is not open to observation or discoverable after a reasonable inspection. As we also noted, the "As Is" clause does not shield the defendants from liability because an inspection of the property would not have revealed the gas well.
 {¶ 40} Ohio courts have held that real estate agents, not unlike other professionals, should be held to a higher standard of care than laypersons.[7] As such, expert testimony may be provided to demonstrate a breach of the standard of care. However, no Ohio court has required expert testimony in cases involving real estate agents. Therefore, the Bedwells claim of breach of fiduciary duty does not automatically fail based on the lack of expert testimony as Chervenic contends.
 {¶ 41} The Ohio General Assembly established the Ohio Real Estate Commission, which is charged with regulating the real estate profession. The Commission has adopted canons of ethics regarding a real estate agent's duty to act fairly and competently in her transactions. Article 1 of the Canons of Ethics for the Real Estate Industry states:
 {¶ 42} "Licensing as a real estate broker or salesman indicates to the public at large that the individual so designated has special expertise in real estate matters and is subject to high standards of conduct in his business and personal affairs. The licensee should endeavor to maintain and establish high standards of professional conduct and integrity in his dealings with members of the public as well as with fellow licensees and, further, seek to avoid even the appearance of impropriety in his activities as a licensee."
 {¶ 43} The Ohio Real Estate Commission is vested with the authority to investigate misconduct on the part of any real estate licensee in Ohio. In the case at issue, Chervenic claims that it cannot be held liable to the Bedwells when it had no knowledge of a gas well under the property until after the closing. However, after that time, Chervenic did learn of the well and drafted an addendum to the agreement, for the Bedwells signature, acknowledging the existence of the well. The Bedwells assert they had no knowledge of the well until they were given the addendum to sign by Chervenic. At the very least, this type of conduct demonstrates an appearance of impropriety on the part of Chervenic. A genuine issue of material fact still exists as to whether Chervenic breached the duty of standard of care owed to the Bedwells or breached the real estate canons of ethics.
 {¶ 44} Smythe Cramer argues that it owed no duty to the Bedwells as they were represented by their own realty agent in the transaction and, therefore, Smythe Cramer had no agency or fiduciary relationship with the Bedwells. Smythe Cramer also argues that the Bedwells had constructive notice of the existence of the gas well as the plat map on file with the Portage County Recorder's Office clearly indicates the existence of a gas well on the property.
 {¶ 45} Smythe Cramer asserts that Chervenic, as the Bedwells' real estate agent, was charged with the duty of disclosing the existence of the gas well. However, Chervenic has claimed it had no knowledge of the gas well until after closing. In a letter to John Bedwell dated June 20, 2001, two months after the closing of the transaction, Smythe Cramer acknowledged that it was aware of the gas well and that it had sold other properties in the vicinity which also contained gas wells.
 {¶ 46} Although Smythe Cramer may have had no contractual relationship with the Bedwells, an absence of an agency relationship does not permit a real estate broker to actively conceal material facts regarding latent defects contained in a parcel of residential real estate. The Ohio Real Estate Commission, in its canon of ethics, requires that real estate agents, "maintain and establish high standards of professional conduct and integrity in his dealings with members of the public as well as with fellow licensees."[8] Therefore, as a professional with specialized knowledge who is held to a higher standard of care than laypersons, a real estate agent owes a duty, not only to his client, but also to other agents and the public at large, to maintain high standards of integrity which includes disclosing material defects in a property of which only that agent and the property owners are aware. Thus, Smythe Cramer had an affirmative duty, under the canon of ethics, to disclose the existence of the gas well to the Bedwells and to Chervenic. There remains a genuine issue of material fact as to whether Smythe Cramer actively concealed the existence of the gas well from the Bedwells which cannot be disposed of through summary judgment pursuant to the record in this case.
 {¶ 47} We next address the contention that the Bedwells had constructive notice of the gas well as it was listed on a plat map with the Portage County Recorder's Office. Constructive notice is defined as "that which the law regards as sufficient to give notice and is regarded as a substitute for actual notice or knowledge."[9]
 {¶ 48} In the case sub judice, the record is not clear whether the execution of the purchase agreement occurred prior to the title search. However, the Bedwells retained Chervenic as their real estate agent and, as such, entrusted them with leading them through the home buying process. Placing the onus on the homebuyers themselves to conduct a thorough search of the public record is in opposition to the purpose of retaining a real estate professional. Chervenic, as the homebuyers' agent, has the duty of providing competent, diligent assistance to the purchasers throughout the sale. Therefore, any duty of inspecting the public record for notice of defects is shared by the buyers' agent. Any defects or information discovered as a result of that inspection should be disclosed to the buyers prior to the closing of the sale.
 {¶ 49} Moreover, although the Bedwells settled their claim against Lawyers Title Insurance Corporation, who presumably conducted a title search of the property in question, this does not relieve either realtor of their fiduciary and/or professional duty to disclose and not actively conceal a latent defect contained within a parcel of residential real estate. The record in the instant case reveals that there remains a genuine issue of material fact as to whether defendants-appellees, the Schmitts, Smythe Cramer, and Chervenic, individually or collectively breached a duty of disclosure, committed breach of contract, and/or breached a fiduciary duty to the Bedwells. Therefore, summary judgment is not appropriate.
 {¶ 50} Appellants' assignment of error is with merit. The judgment of the trial court is reversed and the matter is remanded to the trial court for further proceedings.
DONALD R. FORD, J., ROBERT A. NADER, J., concur.
[1] Nolan v. Nolan (1984), 11 Ohio St.3d 1, 3.
[2] Id.
[3] Clymer v. Clymer (Sept. 26, 1995), 10th Dist. No. 95APF02-239, 1995 Ohio App. LEXIS 4303 at *9, quoting Lake Ashley Dev. v. InnovativeContrs. Bldg. Serv., Inc. (Dec. 29, 1994), 8th Dist. No. 66539, 1994 WL 723774 at *3.
[4] Layman v. Binns (1988), 35 Ohio St.3d 176, syllabus, followingTraverse v. Long (1956), 165 Ohio St. 249.
[5] Felker v. Schwenke (1998), 129 Ohio App.3d 427, 430.
[6] R.C. 5302.30(J).
[7] Richard T. Kiko Agency, Inc. v. Ohio Dept. of Commerce, Div. ofReal Estate (1990), 48 Ohio St.3d 74, 76.
[8] Article 1, The Ohio Real Estate Commission, Canons on Professional Ethics for the Real Estate Industry.
[9] Cox v. Estate of Wallace, (Dec. 31, 1987), 12th. Dist. No. CA87-06-078, 1987 Ohio App. LEXIS 10358, at *6.