[Cite as *Breen v. Ohio Real Estate Comm.*, 2019-Ohio-4164.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JAMES P. BREEN,                              :

    Plaintiff-Appellant,            :

                        No. 108118

v.                                          :

OHIO REAL ESTATE COMMISSION,     :

    Defendant-Appellee.             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 10, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-896954

---

### *Appearances:*

Cohen, Rosenthal & Kramer, L.L.P., Joshua R. Cohen, and
Joshua B. Fuchs, *for appellant*.

Dave Yost, Ohio Attorney General, and Brian R. Honen,
Assistant Attorney General, *for appellee*.

EILEEN T. GALLAGHER, P.J.:

{¶ 1}  Appellant, James P. Breen ("Breen"), appeals a judgment of the Cuyahoga County Court of Common Pleas affirming an administrative order of the Ohio Real Estate Commission ("the Commission") revoking his real estate broker's license.  He claims the following error:

The court of common pleas abused its discretion when it found that the Commission's decision was supported by reliable, probative, and substantial evidence, and was in accordance with the law.

{¶ 2} We find no merit to the appeal and affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} In September 2015, Dyann Davison, a real estate broker, filed a complaint against Breen with the Ohio Department of Commerce, Division of Real Estate and Professional Licensing ("the Division"), alleging that he committed multiple violations of real estate licensing laws in his dealings with property located at 1360 East 9th Street, Cleveland, Ohio. In November 2015, the Division sent Breen a notice of complaint via certified mail to the Shaker Heights address he had provided to the Division as his home address. Along with the complaint, the Division sent requests for production of documents related to the transaction described in the complaint and written responses to the allegations in the complaint. The notice indicated that the responses were due within 20 days of the date of the letter. Another document indicated that Breen could request mediation or an informal meeting to resolve the issues raised in the complaint.

{¶ 4} Three weeks later, the complaint and related documents were returned to the Division by the United States Postal Service as "undeliverable." The Division resent the complaint and related documents to Breen's brokerage office located at 1360 East 9th Street, Cleveland, Ohio, via ordinary mail. The Division never received a response from Breen regarding Davison's complaint, and the Division made no further effort to contact Breen until August 17, 2016.

{¶ 5} On August 17, 2016, Investigator Edward Schirtzinger ("Schirtzinger") sent Breen an email containing the notice of complaint and accompanying documentation originally sent to him by ordinary mail ten months earlier. Schirtzinger's email indicated that Breen's responses to the complaint and requests for documents were due by August 27, 2016. Breen acknowledged receipt of the email that same day, but did not provide written responses to either the complaint or the requests for documents by the August 27, 2016 deadline. (Tr. 31.) Schirtzinger sent a follow-up email to Breen on September 21, 2016, inquiring as to whether Breen intended to participate in the investigation into his alleged misconduct. Breen responded: "We intend to respond next week. Went through some family issues. I'm back at it again. I have to tell you, I'm really confused by these filings." (Tr. 31.) Breen did not respond the following week as promised. (Tr. 33.)

{¶ 6} Thereafter, on October 7, 2016, the Division issued a subpoena duces tecum to Breen by certified mail to his updated residential address in University Heights, Ohio. Breen updated his residential address on his broker renewal application, which was received by the Division in July 2016. The subpoena requested any and all documents related to Dyann Davison, including written responses to Davison's complaint and any documents related to the transaction described in her complaint. (Tr. 36.) Although the post office indicated that the notice of the subpoena was delivered to Breen's address, the subpoena was returned

to the Division as "unclaimed" on November 4, 2016, after the post office had held the subpoena for the maximum period of hold time. (Tr. 38.)

{¶ 7} Approximately ten days later, on November 14, 2016, Schirtzinger emailed Breen a message that read: "Please call me." (Tr. 73.) Breen called Schirtzinger, and Schirtzinger again explained that he needed the requested information regarding the allegations in Davison's complaint. According to Schirtzinger:

> Mr. Breen was a little upset. He indicated he wanted a hearing, and he indicated that he thought the matter was settled. Apparently he had some conversation with the Complainant outside of the investigation, which I was not privy to. But we still needed the information. I expressed that to him, that we still needed the information, needed the response, needed the documents that I requested so I could come to some conclusion in my report.

(Tr. 39.) Following the conversation, Schirtzinger resent the email to Breen on November 14, 2016, that he had originally sent on August 17, 2016, with the complaint and requests for written responses and related documents. (Tr. 40.)

{¶ 8} Schirtzinger never received the requested documents or written responses. Instead, on November 17, 2016, Schirtzinger received an email from Breen's office manager requesting mediation to resolve the allegations against Breen. Schirtzinger responded immediately by email:

> I want to inform you that the timeline for mediation was over a year ago, and there's been no request for mediation by the Complainant. For us to do a mediation, we have to have both parties agree to do that. The other party had never indicated any interest in mediation.
>
> Your written response to this complaint with all requested documents are necessary for me to proceed with this investigation. Your

immediate assistance would be appreciated. Sincerely, Ed Schirtzinger.

(Tr. 41-42.)

{¶ 9} On November 18, 2016, Schirtzinger received the following email from an attorney retained by Breen:

Dear Mr. Schirtzinger,

Please be advised that our law firm represents James Breen and James Breen Real Estate. We have recently become involved in this matter. It's my understanding that based upon discussion with Division's counsel, the complaint is being dismissed. However, we did want to let you know that our client has indicated that requisite documentation will be sent you on Monday.

In addition, a request for an informal meeting has been sent [to] you as well. We are hopeful that you will see that dismissal prior to that time. Please let me know if you have any questions. Thank you.

(Tr. 43.) Schirtzinger did not reply to the email because, by that time, he had turned the case over to the legal department, and it was "out of [his] hands." (Tr. 44.) Despite the representation in the attorney's email that Schirtzinger would receive the documents he requested in connection to Davison's complaint "on Monday," Schirtzinger never received them. (Tr. 44.)

{¶ 10} Davison's lawyer sent a letter to the Division dated December 28, 2016, indicating that Davison and Breen had resolved their dispute and that Davison wished to withdraw her complaint. Nevertheless, the Division issued Breen a notice of a Formal Hearing on June 2, 2017, charging Breen with failure to cooperate with the Division's investigation in violation of R.C. 4735.18(A)(6). The notice made the following allegations in "Schedule A" attached to the notice:

You failed to provide assistance to the Division during its investigation of the case number 2015-621 when you did one or more of the following: you failed to claim one or more Division notices or subpoenas sent to you arising out of the investigation of this case; for a portion of the Division investigation, you failed to maintain a current (residence) address of record with the Division; despite one or more assurances to a Division Investigator that requested records would be provided to the Division, you failed to provide to the Division the requested records. This conduct constitutes a violation of Ohio Revised Code Section 4735.18(A)(6), misconduct, as that section incorporates the Canon of Ethics for the Real Estate Industry, Section I, Article 3, which provides that a licensee should provide assistance wherever possible to the members and staff of the Real Estate Commission and Division of Real Estate in the enforcement of the licensing statutes and administrative rules and regulations.

{¶ 11} Following the hearing, the hearing examiner issued findings of fact and conclusions of law and found, by a preponderance of the evidence, that Breen committed the violations alleged in Schedule A. The hearing examiner found that Breen committed misconduct by (1) failing to pick up certain certified mailings sent to him by the Division, (2) failing to update his current home address of record with the Division, and (3) failing to provide requested documents to the Division's investigator concerning the complaint that had been filed against him. The hearing officer further observed that "[t]he fact that the underlying complaint against Breen was resolved between Breen and the complainant and not pursued by the Division does not exonerate Breen."

{¶ 12} Breen filed objections to the findings of fact and conclusions of law. However, after reviewing the hearing examiner's report and the testimony from the hearing, the Commission voted to revoke Breen's real estate broker's license. Breen filed a timely appeal of the Commission's order to the Cuyahoga County Court of

Common Pleas.  Upon consideration of the record, the trial court entered judgment affirming the Commission's order as lawful and supported by reliable, probative, and substantial evidence.  Breen now appeals to this court.

## II. Law and Analysis

{¶ 13} In the sole assignment of error, Breen argues the trial court abused its discretion when it found that the Commission's decision was supported by reliable, probative, and substantial evidence.

## A. Standard of Review

{¶ 14} In an administrative appeal under R.C. 119.12, a trial court must affirm the administrative decision if it is supported by reliable, probative and substantial evidence, and is in accordance with the law.  *Pons v. Ohio State Med. Bd.,* 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993); *In re Williams*, 60 Ohio St.3d 85, 86, 573 N.E.2d 638 (1993).  "Reliable" evidence is dependable and can be "confidently trusted." *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St. 3d 570, 571, 589 N.E.2d 1303 (1992). "Probative" evidence is relevant and tends to prove the issue in question.  *Id.*  To be "substantial," the evidence must have importance and value.  *Id.*

{¶ 15} In conducting a review of the administrative record, the trial court must consider the credibility of the witnesses, the probative character of the evidence, and the weight thereof.  *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280, 131 N.E.2d 390 (1955).  However, the common pleas court must give due deference to the Commission's resolution of evidentiary conflicts and may not

substitute its judgment for that of the Commission on factual issues. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 407 N.E.2d 1265 (1980).

{¶ 16} Our standard of review is more limited. While the common pleas court must examine the evidence, "[s]uch is not the charge of the appellate court." *Bd. of Edn. of Rossford Exempted Village School Dist. v. State Bd. of Edn.*, 63 Ohio St.3d 705, 707, 590 N.E.2d 1240 (1992). In reviewing the trial court's determination of whether an administrative order was supported by reliable, probative, and substantial evidence, this court's role is limited to determining whether the trial court abused its discretion. *Pons* at 621; *Roy v. Ohio State Med. Bd.*, 80 Ohio App.3d 675, 680, 610 N.E.2d 562 (10th Dist.1992).

{¶ 17} An abuse of discretion implies a decision that is unreasonable, arbitrary, or unconscionable. *State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, 45 N.E.3d 987, ¶ 13. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Vannucci v. Schneider*, 2018-Ohio-1294, 110 N.E.3d 716, ¶ 22 (8th Dist.).

## B. Evidence of Misconduct

{¶ 18} In the sole assignment of error, Breen argues the trial court abused its discretion in affirming the Commission's order revoking his real estate license because "the undisputed evidence" showed that Breen fully cooperated with the Division's investigation and he did not commit any misconduct that warranted disciplinary action.

**{¶ 19}** Breen was charged with violating R.C. 4735.18(A)(6), as that section incorporates Article 3, Section I, of the Canon of Ethics for the Real Estate Industry. R.C. 4735.18(A)(6) provides that the Commission may impose disciplinary sanctions upon a licensee if the licensee is found guilty of "[d]ishonest or illegal dealing, gross negligence, incompetency, or misconduct[.]"  With respect to "misconduct," the Ohio Supreme Court has stated that

> "[m]isconduct" * * * includes unprofessional conduct or that conduct involving any breach of duty which is prohibited under professional codes of ethics, or conduct which is contrary to law.  Willfulness, good intentions or actual harm to a party are not necessarily controlling factors in such license suspension proceedings.

*Richard T. Kiko Agency v. Ohio Doc,* 48 Ohio St.3d 74, 77, 549 N.E.2d 509 (1990). With respect to professional conduct, the *Kiko* court further stated that "[l]ike other professionals, a person holding a real estate license is held to a higher standard of competency and fairness than is a lay member of the public in the market place." *Id.* at 76.

**{¶ 20}** Article 3, Section I, of the Canon of Ethics for the Real Estate Industry provides, in relevant part:

> The licensee should provide assistance wherever possible to the members and staff of the Real Estate Commission and Division of Real Estate in the enforcement of the licensing statutes and administrative rules and regulations adopted in accordance therewith.

**{¶ 21}** Breen contends the trial court erred in affirming the Commission's order to revoke his real estate broker's license because the undisputed evidence showed that he (1) accepted service of each certified mailing he was notified of and

responded to every subpoena and notice that he was aware of, (2) maintained a current address throughout the investigation, (3) did not fail to respond to the Division's request for documents, and (4) fully cooperated with the Division's investigation. (Appellant's brief at p. 1, 7, 9-11.) We discuss each of these arguments separately.

## 1. Certified Mailings

{¶ 22} Breen argues the Commission erroneously found that he "failed to claim one or more Division notices or subpoenas" related to the investigation because there was no evidence that he refused or otherwise avoided the Division's subpoenas or written notices. In support of his argument, he cites his testimony that he did not refuse service of any mailings and asserts that he "was never notified of their existence." (Appellant's brief p. 7.)

{¶ 23} However, Breen's testimony lacks credibility. After the Division's attempt to serve the complaint and related documents at the Shaker Heights address the Division had on file as Breen's home address, the Division mailed the complaint via ordinary mail to Breen's business address located on East 9th Street in Cleveland. Breen testified that the East 9th Street address was his business address at all relevant times. Yet Breen claimed he never received the complaint at that address. He also asserted that he never received the subpoena duces tecum at his updated home address in University Heights because dogs in the neighborhood frighten the mail carriers, and mail delivery to his home is unreliable. (Tr. 111.) Common sense dictates that failure to receive certified mail at a valid address is

possible, but unlikely. And failure to receive certified mail at a valid address is even less likely to occur twice to the same recipient within the span of one year.

{¶ 24} Breen also blamed Schirtzinger for failing to inform him that a subpoena had been sent to his house. (Appellant's brief p. 8, tr. 110.) Breen testified that Schirtzinger never informed him "on the dozen or so phone conversations [they] had." (Tr. 110.) Schirtzinger testified in rebuttal that he spoke to Breen on the phone "no more than four" times. The Division called Schirtzinger to rebut Breen's claim that he had numerous phone conversations with Schirtzinger.

{¶ 25} Nevertheless, Breen further cites his testimony that had he received notice of the certified mailings, he would have picked them up and notified his attorney immediately. (Tr. 112.) The hearing examiner and the trial court obviously found this testimony lacking in credibility because even when Breen acknowledged that he received the complaint and requests for documents via email and promised to respond, he never did. Schirtzinger testified that he reminded Breen multiple times that he needed the written responses and requested documents, but Breen never provided them.

{¶ 26} Breen also testified that he proactively contacted the Division about a potential investigation in the fall of 2015, after Davison informed him that she filed a complaint against him. He claims the Division failed to confirm that an investigation was pending at that time. (Tr. 89-90.) Even if it were true that Breen inquired about an investigation in the fall of 2015, his inquiry does not excuse his subsequent failure to provide the requested written responses and other documents

related to the investigation after Schirtzinger emailed the requests to him and explained that his responses were required.

{¶ 27} Moreover, Breen was not charged with refusing the certified mailings; he was charged with failing to claim notices and subpoenas. Although Breen attempted to provide explanations for his failure to receive the certified mailings, the undisputed evidence showed that Breen failed to accept the certified mailings even though they were mailed to two valid addresses (his updated home address and his business address). The hearing examiner and the trial court apparently concluded that Breen's explanations as to why he never received them were not credible.

## 2. Current Residential Address

{¶ 28} Breen next argues the Division had no basis for concluding that he failed to maintain a current address since he maintained a current residential address throughout the investigation.

{¶ 29} However, R.C. 4735.14(D) states, in relevant part, that "[e]ach licensee shall notify the superintendent of a change in personal residence address." Failure to notify the superintendent of a change in address is a serious matter. R.C. 4735.14(E) states that "[t]he superintendent shall not renew a license if the licensee * * * is * * * not in compliance with this chapter." Thus, the Ohio Supreme Court has held that "'[a] letter mailed to an incorrect address supplied by the person involved constitutes neglect on his part.'" *Townsend v. Dollison*, 66 Ohio St.2d 225,

228, 421 N.E.2d 146 (1981), quoting *Ryan v. Andrews*, 50 Ohio App.2d 72, 361 N.E.2d 1086 (1st Dist.1976).

{¶ 30} Breen contends he maintained a current address throughout the investigation because he updated it when he renewed his license in July 2016, before Schirtzinger sent him the complaint via email in August 2016. However, the Division attempted to serve Breen with a copy of the complaint and related documents at the Shaker Heights address it had on file as his home address in September 2015. The complaint was returned "unclaimed" because Breen had moved but had not notified the superintendent of his new address.

{¶ 31} Breen testified that he moved from the Shaker Heights address to the University Heights address in 2010, but he did not update his residential address until he renewed his broker's license in 2016. (Tr. 146.) Schirtzinger testified that real estate licenses are renewed every three years, and he was surprised to discover that Breen did not update his home address when he renewed his license in 2013. (Tr. 28.) The undisputed evidence showed that Breen failed to notify the superintendent of his change of address for a period of six years. Moreover, his failure to notify the superintendent frustrated the Division's ability to investigate the allegations set forth in Davison's complaint because it was unable to serve Breen with a copy of the complaint at his home in the fall of 2015.

### 3. Requested Documents

{¶ 32} Nevertheless, Breen argues the Commission's finding that he failed to provide requested documents is not supported by the evidence. Although Breen

never produced any documents in response to Schirtzinger's requests, he asserts that he was not required to produce any documents because Schirtzinger informed him that the investigation could continue "without input" from Breen. Breen testified that he understood this to mean that complying with Schirtzinger's request to produce documents related to Davison's complaint was "optional." (Tr. 141.) Breen subsequently changed his testimony and stated that there existed no documents related to the allegations in the complaint. (Tr. 95.) Yet, on cross-examination, Breen conceded that, at the very least, there were leases related to the transaction described in Davison's complaint that he could have produced. (Tr. 151-152, 154.) Breen admitted:

> In hindsight I can see where I might have been at fault. You know, hand him a lease. I mean, does it help his investigation? But I can hand him five 50-page leases. But it's not going to help. And a quick phone call to the person who dismissed the complaint three months prior to any of our conversations probably kills the investigation right then and there. I'm not trying to — in hindsight I can see how that's interpreted as me trying to tell somebody how to do their job, but it seemed like a common sense approach to me.

(Tr. 155.)

{¶ 33} As previously stated, Schirtzinger sent Breen an email containing the notice of complaint and requests for information and documents on August 17, 2016. Schirtzinger's email indicated that Breen's responses were due by August 27, 2016. Breen acknowledged receipt of the email on August 17, 2016, but failed to provide responses to the requests by the August 27, 2016 deadline. Schirtzinger sent Breen another email on September 21, 2016, inquiring as to whether Breen intended to

participate in the investigation into his alleged misconduct. Breen responded that he would respond the next week, but he never did. Thereafter, the Division issued a subpoena duces tecum to Breen's home, which he claimed he never received because the dogs in his neighborhood scared the mail carriers and prevented them from delivering the subpoena. Thereafter, Schirtzinger and Breen spoke on the phone, and Schirtzinger explained to Breen that he still needed the requested information. Despite Schirtzinger's repeated requests and attempts to obtain information from Breen, Breen never provided the requested information. By his own admission, he could have at least provided leases related to the transaction, but he did not. The undisputed evidence showed that Breen failed to provide the requested information and documentation necessary for the Division's investigation.

### 4. Failure to Cooperate

{¶ 34} Finally, Breen argues the Commission's finding that he failed to cooperate with the Division's investigation is not supported by the evidence. He contends there is no evidence that he failed to collect the Division's certified letters, he updated his home address, and responded to the Division's requests for documents. However, as previously discussed, the undisputed evidence shows that Breen failed to claim any certified mailings that were mailed to his business and home addresses. Breen also failed to notify the superintendent of his change of address for a period of six years, and Breen admitted that he never produced any documents in response to Schirtzinger's requests for documents. Despite his argument to the contrary, the undisputed evidence shows that Breen neglected his

duty to cooperate with the Division by repeatedly failing to provide the Division with requested responses to the complaint. Thus, the Commission concluded that Breen violated R.C. 4735.18(A)(6), and Article 3, Section I, of the Cannon of Ethics for the Real Estate Industry, and the trial court reasonably concluded that the Commission's judgment was supported by reliable, probative, and substantial evidence. Having reviewed the record and the transcript, we cannot say that the trial court abused its discretion in affirming the Commission's decision under the circumstances.

{¶ 35} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EILEEN T. GALLAGHER, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR